UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KALEI PROVOW,<br><br>    Plaintiff,<br><br>    v.<br><br>NEXTEL RETAIL STORES LLC, SPRINT CORPORATION and CLIFTON HATCHER,<br><br>    Defendants. | Case No. 14-cv-1156-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motions of defendants Nextel Retail Stores, LLC ("Nextel"), Sprint Corporation ("Sprint") and Clifton Hatcher to stay this case and compel plaintiff Kalei Provow to resolve this dispute through arbitration (Docs. 13 & 39). Provow has responded to the motions (Docs. 29 & 42), and the defendants have replied to her responses (Docs. 30 & 43). At the Court's request, the parties have also submitted supplemental briefing (Docs. 45, 46, 47 & 48).

**I.    Background**

This dispute arises out Provow's agreement with the defendants to subscribe to cellular phone service offered by Sprint ("Subscriber Agreement"). Provow alleges that in September 2012, her cellular phone was malfunctioning, so she took it to a Sprint retail store for repair. Provow alleges that Hatcher, an employee at the store, took her phone into a back room of the store and, without her permission, looked at intimate photos of Provow and her boyfriend stored on her phone and transmitted them to another location. Hatcher also installed a spyware application on Provow's phone that tracked her location and automatically transmitted media such as photographs to external locations. Through her attorney, Provow contacted Sprint and Nextel about Hatcher's unauthorized acts but did not receive a satisfactory response.

In September 2014, Provow filed this lawsuit in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, alleging various state law causes of action (negligence, negligent hiring, negligent retention, negligent bailment, conversion, trespass to chattels, invasion of privacy, negligent infliction of emotional distress, intentional infliction of emotional distress and consumer fraud).  The defendants removed the case to federal court and demanded Provow arbitrate her claims pursuant to an arbitration agreement in the Subscriber Agreement.  The demand letter sent by the defendants contained a demand for arbitration but did not describe the dispute or previous efforts to resolve it, did not attach documents or give other information relevant to the dispute, and did not propose a resolution.  Provow refused to arbitrate.  Provow subsequently amended her complaint to identify Hatcher, whose name she did not know at the time she filed her original complaint.

The defendants now ask the Court to stay this action and compel Provow to arbitrate her dispute with them.  Provow admits that she agreed to arbitrate the dispute presented in this case but argues that the defendants have not satisfied the conditions precedent to arbitration because their demand letter did not provide the notice required under the arbitration agreement.

**II.     Arbitration Agreement**

The Subscriber Agreement between Provow and Sprint is memorialized in a written document that contains the following provisions:

> MANDATORY ARBITRATION.   As set forth in the [General Terms and Conditions of Service], you agree to a mandatory arbitration provision providing that (except for matters properly brought to small claims court) any legal or equitable claim, controversy or dispute of any kind between you and Sprint and/or any of its representatives, must be resolved by final and binding arbitration.
> * * *
> THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

Subscriber Agreement at 2-3 (Doc. 13-1 at 2-3).

In turn, the General Terms and Conditions of Service ("Terms and Conditions") in effect from the time this dispute arose in September 2012 to the present include the following, or substantially similar, relevant provisions:

> Your Agreement with Sprint includes . . . the most recent Sprint Nextel Terms and Conditions of Service ("Ts and Cs"). Carefully read all the parts of your Agreement with Sprint, including the **MANDATORY ARBITRATION Provision and CLASS ACTION WAIVER PROVISION** set forth in the Ts and Cs.
> \* \* \*
> **DISPUTE RESOLUTION**
> \* \* \*
> **Instead Of Suing In Court, We Each Agree To Arbitrate Disputes**
> We each agree to arbitrate all Disputes between us, on an individual basis, not on a class-wide or consolidated basis. This agreement to arbitrate is intended to be broadly interpreted. . . .
>
> **We each also agree as follows:**
> (1) "Disputes" are any claims or controversies against each other related in any way to or arising out of in any way our Services or the Agreement, including, but not limited to, coverage, Devices, billing services and practices, policies, contract practices (including enforceability), service claims, privacy, or advertising, even if it arises after Services have terminated. Disputes include claims that you bring against our employees, agents, affiliates, or other representatives or that we bring against you. It also includes but is not limited to claims related in any way to or arising out of in any way any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory.
>
> (2) If either of us wants to initiate a claim to arbitrate a Dispute, we each agree to send written notice to the other providing a description of the dispute, a description of previous efforts to resolve the dispute, all relevant documents and supporting information, and the proposed resolution. . . . We each agree to make attempts to resolve the dispute prior to filing a claim for arbitration. If we cannot resolve the dispute within forty-five (45) days of receipt of the notice to arbitrate, then we each may submit the dispute to formal arbitration.

Terms and Conditions at 1, 8 (Doc. 13-3 at 1, 8; emphasis in original).

**III.   Analysis**

All parties agree that the arbitration agreement in this case is covered by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural

3

policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *accord Perry v. Thomas*, 482 U.S. 483, 488 (1987). The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25; *accord County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 823 (7th Cir. 2006). Nevertheless, the Court must remember that the intentions of the parties in entering an arbitration agreement trump the FAA's pro-arbitration policy, and a party cannot be compelled to arbitrate a dispute it did not agree to submit to arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *see Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 782 (7th Cir. 2014); *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

The FAA commands a federal court, on the request of one of the parties, to stay proceedings where (1) the issue is referable to arbitration under an agreement in writing for such arbitration, and (2) the party applying for the stay is not in default in proceeding with such arbitration. *See* 9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The stay shall last "until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3; *accord Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (quoting *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727,

4

732 n. 7 (7th Cir. 2005) ("the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright")).   The FAA also commands a federal court to affirmatively compel arbitration where there is a written agreement to arbitrate, the dispute falls within the scope of the agreement, and the opposing party refuses to arbitrate.   9 U.S.C. § 4; *Zurich Am. Ins. Co.*, 417 F.3d at 690.   Here, the parties agree that the issue raised in this case is referable to arbitration but they do not agree whether the parties are in default or have refused to arbitrate.

Provow argues she has no duty to arbitrate because the defendants failed to comply with the arbitration agreement's requirement that they "send written notice to the other providing a description of the dispute, a description of previous efforts to resolve the dispute, all relevant documents and supporting information, and the proposed resolution."   Terms and Conditions at 8 (Doc. 13-3 at 8).   Provow argues that the defendants' counsel's letter demanding arbitration did not include the foregoing details.   Provow further argues that the defendants cannot resort to arbitration until they "make attempts to resolve the dispute" and are unable to do so within 45 days of proper written notice.   Only then, Provow argues, is the matter subject to arbitration.

In support of her position, Provow cites *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287 (11th Cir. 2002).   That case involved an arbitration agreement between Kemiron and Aguakem that required an informal attempt to settle any dispute and then mediation before arbitration.   *Id.* at 1289.   A dispute arose, and Kemiron filed suit.   *Id.*   Without asking Kemiron to mediate the dispute, Aguakem moved to stay the suit and compel arbitration under the FAA. *Id.*   The Eleventh Circuit Court of Appeals ultimately determined that since a request for mediation, mediation and a request for arbitration were conditions precedent to arbitration and since no party had sought mediation, mediated or given notice of the intent to arbitrate the dispute, Kemiron had no duty to arbitrate.   *Id.* at 1291.

While *Kemiron* supports Provow's position, it is of questionable value in light of a more recent Supreme Court case: *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). *Howsam* involved an arbitration agreement between an investor and an investment advisor that was governed by a rule imposing a limitations period for arbitrating disputes. *Id.* at 81. The investor initiated arbitration beyond the limitations period, so the investment advisor filed a suit seeking to enjoin the arbitration. *Id.* The Supreme Court reiterated the longstanding rule that the "question of arbitrability" of a dispute is for a court to decide as a gateway matter. *Id.* at 83-84. However, it noted that gateway matters for a court to decide generally include whether a specific party is bound by an arbitration clause, whether the clause applied to a certain kind of dispute, *id.* at 84, and whether a contract was actually formed and is enforceable, *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010). On the other hand, procedural questions like waiver, delay, time limits, notice, laches, estoppel and satisfaction of conditions precedent to arbitration are presumptively for the arbitrator to decide, even though they can effectively close the gate to arbitration. *Howsam*, 537 U.S.. at 84-85. The latter issues, the Court noted, are not really "questions of arbitrability" as federal jurisprudence recognizes such questions. *Id.* at 85. Thus, in the absence of any language to the contrary, the time limitation defense was for the arbitrator to decide. *Id.*

In *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206-07 (2014), the Supreme Court reiterated the line between what issues are presumptively for courts and arbitrators to decide:

> On the one hand, courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about "arbitrability." These include questions such as "whether the parties are bound by a given arbitration clause," or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."
>
> On the other hand, courts presume that the parties intend arbitrators, not courts, to

> decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of "waiver, delay, or a like defense to arbitrability." And they include the satisfaction of "'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'"

*Id.* at 1206-07 (internal citations omitted); *see also Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 481 (7th Cir. 2010) (holding that whether disagreement notices, a precondition to arbitration, were detailed enough was a question for the arbitrator). *Compare R.J. Corman Derailment Servs., LLC v. International Union of Operating Eng'rs*, 422 F.3d 522, 527 (7th Cir. 2005) (distinguishing *Howsam* and deciding as court's question of arbitrability whether arbitration agreement was still in force after expiration of collective bargaining agreement).

The dispute in this case must be sent to an arbitrator to decide whether the conditions precedent have been satisfied and any other arbitrable matters that follow from that decision. In the Subscriber Agreement, Provow agreed "to a mandatory arbitration provision providing that . . . any legal or equitable claim, controversy or dispute of any kind between you and Sprint and/or any of its representatives, must be resolved by final and binding arbitration." Subscriber Agreement at 2 (Doc. 13-1 at 2). Additionally, as a term and condition of her cellular phone service, she agreed "to arbitrate all Disputes" with the defendants. Terms and Conditions (Doc. 13-3 at 8). It is clear, and all parties agree, that the broad arbitration agreement covers the dispute at issue in this case and binds all parties to this case. Under *Howsam*, there is a presumption that that is all the Court decides, and other matters such as whether the conditions precedent to arbitration are satisfied are left to be decided by an arbitrator. Since there is no clear and unmistakable indication otherwise in the Subscriber Agreement or the Terms and Conditions, the *Howsam* presumptions hold.

Provow argues that the *Howsam* rule does not apply in this case. However, the authority

7

she cites does not persuade this Court to disregard this Supreme Court clear precedent in *Howsam* and *BG* regarding allocation of decisions regarding threshold arbitration questions and Seventh Circuit cases like *Lumbermens* that follow that precedent. It either predates, conflicts with, does not consider, or is distinguishable from *Howsam* and is therefore not persuasive to the Court. Provow also argues that because there is no *dispute* about whether the defendants complied with the conditions precedent in the arbitration agreement, it should not be referred to arbitration pursuant to an agreement to refer all *disputes*. Even if her position were correct, it is not true that the defendants do not dispute compliance with the conditions precedent. In fact, it is clear from their briefing that they believe all conditions precedent that apply to them, if any, have been satisfied. That they did not make this argument more clearly or forcefully is consistent with their argument that the question is not to be, and should not be, decided in this forum.

Because the issue in this case is "referable to arbitration under an agreement in writing for such arbitration," the Court must stay this action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Furthermore, because Provow has indicated an unwillingness to participate in arbitration of her dispute with the defendants, the Court finds she has refused to arbitrate and must compel her to do so. *See* 9 U.S.C. § 4. Should the arbitrator decide Provow has no duty to arbitrate the merits of her dispute because the defendants did not fulfill conditions precedent, she may seek relief from this Court accordingly.

### IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the defendants' motions to stay this case and compel Provow to arbitrate (Docs. 13 & 39);

- **STAYS** this case until arbitration has been had in accordance with the terms of the Subscriber Agreement and the Terms and Conditions;

- **COMPELS** Provow to resort to arbitration; and

- **ORDERS** Provow to file a status report in September 2015, and every March and September thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration.

**IT IS SO ORDERED.**
**DATED: May 15, 2015**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**